UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CURTIS CRAYTON,                                  :
                Petitioner,           :     **REPORT AND RECOMMENDATION**

         -against-                              :     02 Civ. 2565 (JSR)(KNF)

SCOTT CARLSEN, Superintendent,    :

                Respondent.           :
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is the petition of Curtis Crayton ("Crayton") for a writ of habeas corpus, made pursuant to 28 U.S.C. § 2254. Crayton alleges that his confinement by the state of New York is unlawful because his right to a fair trial was violated when: (1) the trial court participated excessively in the examinations of Crayton and of prosecution witnesses, with the goals of rehabilitating the testimony of prosecution witnesses and casting doubt on the credibility of Crayton's testimony; (2) during its closing statement to the jury at Crayton's trial, the prosecution made a factual statement that was not supported by the evidence; and (3) the trial court did not instruct the jury properly about accessorial liability.

The respondent opposes the petitioner's application for habeas corpus relief on the grounds that all of the petitioner's claims are procedurally forfeited and lack merit.

## II. BACKGROUND

Crayton was arrested on August 9, 1998, as part of a "buy and bust" operation conducted by undercover police officers in the vicinity of 129th Street and Fifth Avenue in Manhattan. An

undercover officer approached Carmen Hernandez ("Hernandez") and asked where he could find some "nicks," referring to five-dollar amounts of crack cocaine. Hernandez directed the officer to James Breddock ("Breddock"), who was standing astride a bicycle on the corner of 132nd Street and Fifth Avenue. According to the officer, Crayton was also standing astride a bicycle, next to Breddock. The officer testified that Crayton gave the officer two purple-topped vials of crack cocaine in exchange for ten dollars. Shortly thereafter, police officers placed Crayton under arrest. At the time of his arrest, Crayton was in possession of five purple-topped vials of crack cocaine.

A New York County grand jury returned an indictment charging Crayton with: one count of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39) and one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16).

Crayton proceeded to trial before a jury in New York State Supreme Court, New York County. Crayton conceded that he was in possession of five vials of crack cocaine at the time of his arrest. He claimed that they were for his personal use and that he was not involved in the sale of illegal drugs. Crayton maintained that Breddock, not Crayton, sold the two vials of crack cocaine to the undercover officer. In his trial testimony, the undercover officer contradicted Crayton's account of the sale, stating that "there is no doubt in my mind" that Crayton provided him with two vials of crack cocaine.

During the trial, in addition to the undercover officer, other police officers involved in the buy and bust operation testified. At one point, one of the officers gave testimony concerning the sequence of arrests of Crayton and another that might not have been consistent with the

information that the officer recorded in his Daily Activity Report ("DAR") on the day Clayton was arrested. In particular, the officer testified that he arrested Hernandez before he arrested Crayton and Breddock, while the DAR indicated that Crayton and Breddock were arrested first. During the officer's re-direct examination, the following exchange occurred:

> [PROSECUTION]: Officer, when was Miss Hernandez arrested, before or after Mr. Breddock and Mr. Crayton?
> [THE WITNESS]: To the best of my recollection, I personally apprehended Carmen Hernandez. The way I see it, assuming I grabbed her, in my mind she was the first one grabbed. So in my mind, she was the first one grabbed. In fact, the rest of the team may have just prior moved in on the other subjects. Because of my recollection, I'm assuming –
> THE COURT: But you were the first guy there when they apprehended the other two guys, Crayton and Breddock?
> THE WITNESS: No.
> THE COURT: So that could have preceded –
> THE WITNESS: Correct.
> THE COURT: Or at least simultaneously?
> THE WITNESS: Correct.

Tr. 235-36.[1]

At various times during Crayton's testimony, the trial court interposed its own questions. For instance, during direct examination of Crayton, the following exchange occurred:

> THE COURT: How many vials a day would you do?
> THE WITNESS: Anywhere from four to ten.
> THE COURT: How much a day, money-wise?
> THE WITNESS: Anywhere from $15 to $30 or $40.
> THE COURT: You were getting four or five vials a day for $15?
> THE WITNESS: I said from $15 to $30. I don't buy the same amount every time. If I don't have the money I couldn't buy what I wanted.

---

[1] "Tr." refers to the trial transcript filed by the Respondent.

Tr. 280.

During summation, Crayton argued that a slight discrepancy between the weights of the two vials sold to the undercover officer and the five vials found in Crayton's possession suggested they were of different origins. The prosecution, during its summation, stated: "These vials, I submit, were packed by crackheads in some kind of drug market or whatever.... They're not packed by a pharmaceutical company; they're not weighed out exactly." Tr. 344-45. No evidence was adduced at trial concerning the manner in which the vials of crack cocaine were packed or weighed.

After the presentation of evidence, the trial court instructed the jury about, <u>inter</u> <u>alia</u>, accessorial liability. The court told the jury that "under our law, a person who aids, assists, or participates in the commission of a crime is as guilty as any other person taking part in the crime." The court continued:

> "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."
>
> * * *
>
> So, when two or more persons act with each other in pursuant [sic] of a common plan, actuated by the same intent and knowledge, to wit, to sell and possess drugs, and each of them does some act or acts in fulfillment of that plan or common scheme, then each of the persons who does some act towards the accomplishment of the common end is a principal in the crime, whether he performs a major or minor part in the common endeavor.

Tr. 378, 380-81 (quoting N.Y. Penal Law §20.00).

The trial court instructed the jury that in order to find the petitioner guilty of the offense of criminal sale of a controlled substance in the third degree, it must find that "[t]he defendant,

4

acting in concert, in the County of, City of New York, on or about August 9, 1998, knowingly and unlawfully sold to a police officer known to the Grand Jury a narcotic drug, to wit, cocaine."

Thereafter, Crayton objected that the court's instruction about accessorial liability was unbalanced. Crayton asked the court to state explicitly that "mere presence at the scene" or "mere association" does not establish accessorial liability. The court stated, in response: "That was never part of the accessorial liability charge." The court declined to instruct the jury further on this point.

During its deliberations, the jury asked the court to clarify the term "acting in concert," which the court used in its instructions about the criminal sale of a controlled substance. The court stated that "I will, in effect, reiterate my charge pertaining to accessorial liability. And I will not include the phrase that the defendant wants or the defense lawyer insists upon." When Crayton reiterated his request for an explicit "mere presence" instruction, the trial court responded: "No. I think this accessorial liability is couched in language which anyone can absorb and appreciate.... I think it's quite explicit and quite clear, and I don't think I can improve upon it."

The jury found Crayton guilty on both charges. On April 19, 1999, Crayton was sentenced to concurrent terms of incarceration: five to ten years of imprisonment for the third degree sale conviction and five to ten years of imprisonment for the third degree possession conviction.

Crayton appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"). He urged that court to upset his conviction because: (1) the trial court participated excessively in examining witnesses, for the purposes of rehabilitating the testimony of prosecution witnesses and casting doubt on Crayton's testimony; (2) the prosecution's statement, during its closing argument, concerning the manner in which the vials of crack had been packaged, was not supported by the evidence; and (3) the trial court's instruction to the jury about accessorial liability did not properly convey the applicable law. On December 12, 2000, the Appellate Division affirmed the judgment of conviction. It found, among other things, that Crayton's "claim that the trial court excessively interfered in the examination of witnesses is unpreserved for review ... and we decline to review it in the interest of justice." People v. Crayton, 278 A.D.2d 64, 718 N.Y.S.2d 299, 300 (App. Div. 1st Dep't 2000). The Appellate Division found that "[t]he court's instruction on accessorial liability was appropriate and the court meaningfully responded to a jury note on that subject by rereading its original instruction." Id. Finally, the Appellate Division found that "[t]he prosecutor's summation remark concerning the manner in which illegal drugs are packaged drew a reasonable inference from the evidence and was a permissible response to defendant's summation." Id. at 65, 300.

Crayton sought leave to appeal from the Appellate Division's determination to the New York Court of Appeals. In his application for leave, Clayton did not raise any claim concerning the examination of witnesses by the trial court, but he did raise the claims of prosecutorial misconduct and erroneous jury instruction that were raised before the Appellate Division. On

March 20, 2001, the New York Court of Appeals denied Crayton's application. See People v. Crayton, 96 N.Y.2d 782, 725 N.Y.S.2d 646 (2001).

Thereafter, Crayton filed the instant petition for a writ of habeas corpus, seeking relief on the grounds noted above.

### III. DISCUSSION

*Examination of Witnesses by the Trial Court*

    *A)*    *Exhaustion*

Before a habeas corpus petitioner may seek habeas corpus relief in a federal court, he must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In order for a claim to be exhausted, a petitioner must have presented it to each level of the state courts to which the right to appeal lies, including the highest state court. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887, 888 (1995); Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512 (1971).

In his application for leave to appeal to the New York Court of Appeals, Crayton did not raise his claim that the trial court's examination of witnesses was improper. As this claim was not presented to that court, it has not been exhausted at the state court level. Moreover, Crayton may not return to that court to make a second request for leave to appeal. See Rules of Practice, N.Y. Court of Appeals § 500.10. Moreover, he may not obtain collateral review of this claim in state court because the trial record provided sufficient facts to permit review of this claim on direct appeal. See N.Y. Criminal Procedure Law ("NYCPL") § 440.10(2)(c). Crayton can no longer present this claim to the state courts; the claim has been procedurally defaulted. As a result, the claim should be deemed exhausted.

In order to obtain federal habeas corpus review of a procedurally defaulted claim, a habeas corpus petitioner must show cause for the default and prejudice attributable thereto, or that the federal court's failure to consider his claim would result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2564-65 (1991).

To show cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. See McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 [1986]). In the case at bar, Crayton does not allege any such external impediment, and none is apparent from the record before the Court. Therefore, Crayton has not shown cause for his default, and it is unnecessary to consider the issue of prejudice. See Levine v. Commissioner of Correctional Servs., 44 F.3d 121, 126-127 (2d Cir. 1995).

To show that a fundamental miscarriage of justice will result if a federal habeas court does not consider the merits of a claim, a petitioner must provide "new reliable evidence ... that was not presented at trial" and that shows that he is "actually innocent." See Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). As Crayton has proffered no new evidence of his innocence, he cannot overcome the procedural default of this claim.

  B)  *Independent and Adequate State Law Ground*

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729, 111 S. Ct. at 2553-54. In most cases, a state procedural bar constitutes an

adequate and independent state law ground that is sufficient to preclude federal habeas corpus review. "In exceptional cases, however, an exorbitant application of a generally sound rule may affect the adequacy and independence of the state procedural ground, and allow the United States district court to consider the merits of a constitutional claim." Rosa v. Herbert, 277 F. Supp. 2d 342, 351 (S.D.N.Y. 2003) (quoting Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885 [2002]); see also Bell v. Poole, No. 00 Civ. 5214, 2003 WL 21244625, at *9 (E.D.N.Y. Apr. 10, 2003) ("The mere invocation of a procedural bar does not ... automatically preclude review in this court.").

The Second Circuit Court of Appeals has stated that a procedural bar is adequate to support a state court judgment only if it is based on a rule that is "firmly established and regularly followed" by the state in question. Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003). Thus, the parties to an action must have notice of the state procedural rule and the rule must be applied consistently in similar circumstances. See Bell, 2003 WL 21244625, at *9. Furthermore, a state procedural rule must serve a legitimate state interest. See Rosa, 277 F. Supp. 2d at 351; Smart v. Scully, 787 F.2d 816, 820 (2d Cir. 1986). However, "the adequacy of a state procedural bar is determined with reference to the particular application of the rule; it is not enough that the rule generally serves a legitimate state interest." Cotto, 331 F.3d at 240 (quoting Lee, 534 U.S. at 387, 122 S. Ct. at 891) (internal quotation marks omitted). Therefore, an inquiry into whether the application of a procedural rule is "firmly established and regularly followed" in the specific circumstances presented in a case includes "an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Id.

When Crayton presented this claim to the Appellate Division, that court rejected the claim because Crayton had not raised the claim at trial and, thus, had not preserved it for appellate review. People v. Crayton, 278 A.D.2d at 64, 718 N.Y.S.2d at 300.

NYCPL § 470.05, in its most pertinent part, provides that:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court....

NYCPL § 470.05(2).

The purpose of the rule is "to fairly apprise the court and the opposing party of the nature and scope of the matter contested." People v. Jones, 81 A.D.2d 22, 41-42, 440 N.Y.S.2d 248, 261 (App. Div. 2d Dep't 1981).

New York's contemporaneous objection rule is firmly established and has, for many years, been applied to claims of error involving federal constitutional rights. See People v. Iannelli, 69 N.Y.2d 684, 512 N.Y.S.2d 16 (1986); People v. Thomas, 50 N.Y.2d 467, 429 N.Y.S.2d 584 (1980). It has been applied routinely in circumstances, such as those in the case at bar, in which a defendant did not make a timely protest to judicial bias or interference by a trial court in the examination of witnesses. See, e.g., People v. Yut Wai Tom, 53 N.Y.2d 44, 54-56, 439 N.Y.S.2d 896, 902-04 (1981); People v. Prado, 1 A.D.3d 533, 534, 767 N.Y.S.2d 129, 130 (App. Div. 2d Dep't 2003) (judicial bias); People v. Association of Trade Waste Removers of Greater New York, 267 A.D.2d 137, 140, 701 N.Y.S.2d 12, 16 (App. Div. 1st Dep't 1999) (judicial bias and interference); People v. Jennings, 210 A.D.2d 349, 620 N.Y.S.2d 282 (App.

Div. 2d Dep't 1994) (citing Yut Wai Tom, supra). Crayton has not identified any respect in which the Appellate Division's application of this rule to the case at bar might have departed from the regular application of the rule to similar cases in New York appellate courts.

Therefore, in order to overcome the procedural bar imposed by the Appellate Division's determination that this claim is unpreserved, Crayton must show cause for his default and prejudice attributable thereto or demonstrate that the failure to consider his federal claims will result in a fundamental miscarriage of justice. Crayton has shown neither cause for his procedural default nor prejudice. As noted above, he has not proffered any new evidence that he is actually innocent.

In light of the foregoing, the petitioner may not obtain habeas corpus relief on this claim.

*Prosecutorial Misconduct*

As noted above, in order to seek habeas corpus relief in a federal court, a petitioner must have fairly presented the substance of his federal claims to the state courts for adjudication. See 28 U.S.C. § 2254(b)(1)(A). A petitioner must also fairly apprise the state courts that his claim possesses a federal dimension. See Daye v. Attorney General, 696 F.2d 186, 192 (2d Cir. 1982).

Stating simply that the petitioner did not receive a "fair trial" is not enough in itself to apprise state courts of an alleged federal constitutional violation. See Kirksey v. Jones, 673 F.2d 58, 60 (2d Cir. 1982) ("Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim."). However, even without alleging the violation of a specific constitutional provision expressly, a petitioner may fairly present a federal constitutional claim to a state court by: "(a) [relying] on pertinent federal cases employing [federal] constitutional analysis, (b) [relying] on state cases employing [federal]

constitutional analysis in like fact situations, (c) [asserting] the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [alleging] a pattern of facts that is well within the mainstream of [federal] constitutional litigation." Daye, 696 F.2d at 194.

Although Crayton alleged a violation of his right to due process under the Fourteenth Amendment explicitly in his application for leave to appeal to the New York Court of Appeals, he did not do so in his appeal to the Appellate Division. However, in the brief submitted to the Appellate Division, Crayton cited People v. Ashwal, 39 N.Y.2d 105, 383 N.Y.S.2d 204 (1976). In Ashwal, the New York Court of Appeals cited Berger v. United States, 295 U.S. 78, 55 S. Ct. 629 (1935), to support the proposition that "[a]bove all [the prosecutor] should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant." Ashwal, 39 N.Y.2d at 110, 383 N.Y.S.2d at 207. Berger reversed a criminal conviction on the grounds that the prosecutor had used "improper insinuations and assertions calculated to mislead the jury." Berger, 295 U.S. at 85, 55 S. Ct. at 633. Although it does not cite the Due Process Clauses of the Fifth or Fourteenth Amendments, the Berger holding on prosecutorial misconduct sets forth a federal rule of due process that is applicable to state criminal prosecutions. See Powell v. Wiman, 287 F.2d 275, 279 (5th Cir. 1961) (citing Berger to support holding that state criminal prosecution violated federal due process rights); Curran v. Delaware, 259 F.2d 707, 712 (3d Cir. 1958) (same). The Court finds that the citation to Ashwal in Crayton's appellate brief was sufficient to apprise the Appellate Division that Crayton's prosecutorial misconduct claim possessed a federal constitutional dimension.

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522 (2000). In order to grant the writ there must be "some increment of incorrectness beyond error. [T]he increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

Under federal law, an improper statement to a jury by a prosecutor will require reversal of a conviction only where the remark so infected the trial as to make it fundamentally unfair, thereby denying a defendant due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, ... the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 11-12, 105 S. Ct. 1038, 1044 (1985); see also Darden v. Wainwright, 477 U.S. 168, 181,

106 S. Ct. 2464, 2471 (1986) ("It is not enough that the prosecutors' remarks were undesirable or even universally condemned.").

In determining whether a prosecutor's improper remarks prejudiced a defendant, a court should consider three factors: (1) the severity of the [prosecutor's] misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the improper statements. See, e.g., United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004); United States v. Evangelista, 122 F.3d 112, 120 (2d Cir. 1997).

During his closing statement, Crayton argued that a slight discrepancy between the average weights of four of the five vials found in his possession and the weights of the two vials sold to the undercover officer could indicate that the two sets of vials had different origins. In response, during its closing statement, the prosecution stated that "[t]hese vials, I submit, were packed by crackheads in some kind of drug market or whatever ... [t]hey're not packed by a pharmaceutical company; they're not weighed out exactly."

A prosecutor, during summation, may draw all reasonable inferences from the evidence on the record. See Young, 470 U.S. at 9 n.7, 105 S. Ct. at 1043 n.7. The discrepancy between the weights of vials from the two sets of vials was, at most, 0.4 grams. Crack cocaine is an illegal substance. Under the circumstances, it was not unreasonable for the prosecution to draw an inference that the vials of cocaine at issue in Crayton's trial were likely packaged in an unregulated environment that would produce some variation in the vials' weight. Even if the prosecutor's remarks had been improper, it was not unreasonable to conclude, in light of the other evidence presented at trial, that the above-noted remark did not result in substantial prejudice to Crayton. A police officer identified Crayton in court as the man who sold him two

vials of crack cocaine. Crayton conceded that he was in possession of five vials at the time of his arrest, and other evidence adduced at trial indicated that those five vials were similar in appearance to the two vials sold to the undercover officer. Crayton has not identified any basis upon which to conclude that the jury's verdict turned on the challenged remark or that the remark affected the jury's ability to weigh the evidence and apply the law. See Young, 470 U.S. at 12, 105 S. Ct. at 1045. In any event, it does not appear that the Appellate Division applied the above-noted Supreme Court precedents unreasonably when it held that "[t]he prosecutor's summation remark ... drew a reasonable inference from the evidence and was a permissible response to defendant's summation." Crayton, 278 A.D.2d at 65, 718 N.Y.S.2d at 300.

Consequently, this claim does not warrant habeas corpus relief.

*Erroneous Jury Instruction*

In his appellate brief and application for leave to appeal to the New York Court of Appeals, Crayton did not raise expressly any points of federal law in support of his contention that the jury instruction about accessorial liability was inadequate. Crayton did not cite any state decisional law that employed pertinent federal constitutional analysis. He did not present these claims to the state courts using terms or alleged facts that would call to mind a specific federal constitutional right or place his claim within the mainstream of federal constitutional litigation. While Crayton asserted that he was deprived of a "fair trial," this phrase is not, without more, sufficient to apprise the state courts of a Fourteenth Amendment due process violation. See Kirksey, 673 F.2d at 60.

Therefore, this ground of Crayton's habeas corpus petition, regarding the jury instruction, is unexhausted. Moreover, the trial record provided sufficient facts to permit review of this

claim by the Appellate Division on direct appeal. In such a circumstance, Crayton is procedurally barred from challenging his conviction on this ground in state court. See NYCPL § 440.10(2)(c). Crayton has shown neither cause for his procedural default nor prejudice. As noted above, he has not proffered any new evidence that he is actually innocent.

Under these circumstances, his claim concerning the trial court's jury instruction should not be entertained by this court.

## IV.  RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl St., Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

16

Dated: New York, New York  
      August 4, 2005

Respectfully submitted,

_____  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Curtis Crayton  
Luke Martland, Esq.